IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02201-RPM-BNB

TRUSTEES OF THE TEAMSTERS LOCAL UNION NO. 435 CONSTRUCTION DIVISION HEALTH AND WELFARE TRUST FUND,

Plaintiff,

v.

DUFFY CRANE, INC., a Colorado corporation d/b/a Duffy Crane and Hauling, Inc.,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Plaintiffs' Motion to Dismiss Second Counterclaim** [Doc. # 28, filed 06/30/2009] (the "Motion"). I respectfully RECOMMEND that the Motion be DENIED.

## I. STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the court must accept the plaintiffs' well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiffs filed their Complaint on October 10, 2008 [Doc. #1]. The Complaint is brought by the Trustees of the Teamsters Local Union No. 435 Construction Division Health and Welfare Trust Fund (the "Trustees") as fiduciaries of the Teamsters Local Union No. 435 Construction Division Health and Welfare Trust Fund (the "Fund") against Duffy Crane, Inc. ("Duffy"). The Complaint alleges the following:

1. The Fund is an express trust and multiemployer employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). *Complaint*, p. 2, ¶ 3.

2. Duffy is an employer within the meaning of ERISA. Id. at ¶ 4. At all times relevant to the allegations of the Complaint, Duffy employed teamsters. Id. at ¶ 6.

3. On July 1, 2004, Duffy entered into a Heavy Moving and Construction Site Agreement (the "July 2004 Agreement") with Teamsters Local Union No. 435 Construction Division. Id. at ¶ 7; *Motion*, p. 5 and Ex. A.

4. The July 2004 Agreement contained provisions which obligated Duffy to pay to the Fund a contribution of $720.00 per month per covered employee. *Complaint*, ¶ 8.

5. The July 2004 Agreement was amended by the terms of a Memorandum dated July 19, 2007, which was executed by authorized officers of Duffy and the Teamsters Local Union No. 435 Construction Division on August 9, 2007 (the "July 2007 Memorandum"). Id. at pp. 2-3, ¶ 9 and Ex. A.

6. The July 2007 Memorandum provided that Duffy would pay any annual health insurance escalation up to $750.00 per month per employee, but if the cost of health insurance

exceeded $750.00 per month, the increase would be split on a 60/40% basis between the company and the employee.  Id. at p. 3, ¶ 10 and Ex. A.

    7.  Duffy was advised by a memorandum dated September 1, 2005 (the "September 2005 Memorandum"), that the cost of Health and Welfare Fund coverage was $864.00 per month per employee.  Id. at ¶ 11 and Ex. B.

    8.  Duffy has had and continues to have an obligation to contribute to the Fund a rate of $864.00 per month, per employee since August 1, 2007, the effective date of the July 2007 Memorandum.  Id. at p. 4, ¶ 14.

    9.  Duffy has failed to pay the increased contribution amount in violation of the July 2004 Agreement, the July 2007 Memorandum, and ERISA.  Id. at ¶¶ 15-16.

On May 7, 2009, the defendant filed its Second Amended Answer and Counterclaim [Doc. #25] (the "Answer").[1]  The Amended Counterclaim is asserted against the Trustees and contains the following allegations:

    1.  The Fund is an express trust and an ERISA-governed plan.  *Answer*, p. 5, ¶ 4.

    2.  Duffy was a party to the July 2004 Agreement with Teamsters Local Union No. 435.  The July 2004 Agreement was effective from July 1, 2004, through June 5, 2007.  Id. at ¶ 5.

    3.  The July 2004 Agreement obligated Duffy to pay to the Fund a contribution of $720.00 per month per covered employee.  Id.

    4.  The ownership of Duffy changed in 2005.  Id. at ¶ 7.

---

[1] The plaintiffs have withdrawn any objection to the filing of the Second Amended Answer.  *Motion*, p. 2.

5. The Trustees sent to Duffy a copy of the Memorandum dated September 1, 2005. The September 2005 Memorandum is addressed to "All Employers." The September 2005 Memorandum states that the Board of Trustees "has voted to increase the monthly contribution rate. Effective with contributions paid in October on September work for November 2005 coverage, the required contribution for coverage will be $864.00 per month or the hourly equivalent." Id. at pp. 5-6, ¶ 8 (emphasis in original).

6. "Not realizing that this memorandum did not apply to the company, [Duffy] paid the increased rate from October 2005 . . . through April 2007 . . . for a total of 19 months." Id. at p. 6, ¶ 9. Duffy was only required to pay the rate negotiated and set forth in the July 2004 Agreement--$720.00 per month per employee. Id. at ¶ 12.

7. When Duffy's owner learned that he was misled by the September 2005 Memorandum and mistaken in his belief that the September 2005 Memorandum applied to Duffy and that the rate Duffy was required to pay under the July 2004 Agreement could not be increased by vote of the Trustees, Duffy resumed paying $720.00 per month per employee in May 2007. Id. at ¶ 13.

8. Duffy's overpayment totals in excess of $60,000. Id. at ¶ 11.

9. The July 2004 Agreement automatically renewed on June 5, 2007. Duffy has paid all premium contributions required under that agreement. Id. at ¶ 14.

10. The Trustees issued to the employees of Duffy a memorandum dated February 6, 2009, which announced the termination of the Fund effective March 31, 2009. Id. at p. 7, ¶ 18.

11. The Trustees never acknowledged Duffy's overpayment, never returned any portion of the amount overpaid, and never applied the overpayment as a credit against amounts later owed by Duffy under the Agreement. Id. at ¶ 20.

Duffy brings its Amended Counterclaim for "[u]njust enrichment and restitution" under ERISA, "29 U.S.C. § 1132(a)(3), § 1103(c), and federal common law." Id. at p. 4, ¶ 1. The plaintiffs seek dismissal of the Amended Counterclaim.

### III. ANALYSIS

Section 1103(c)(1), 29 U.S.C., which is a part of ERISA, provides that "the assets of a plan shall never inure to the benefit of any employer . . . ." Subsection 1103(c)(2)(A)(ii) provides that "[i]n the case of a contribution . . . if such contribution . . . is made by an employer to a multiemployer plan by a mistake of fact or law . . . paragraph (1) shall not prohibit the return of such contribution . . . to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake."

The plaintiffs assert that "[t]here is no provision of ERISA which requires the Trustees to grant a refund to Defendant" and that 29 U.S.C. § 1103(c)(2)(A)(ii) "is permissive, not mandatory, i.e. the statute does not require a refund of contributions in all cases, it only provides a narrow exception to the otherwise broad language of" section 1103(c)(1). *Motion*, p. 3. The plaintiffs argue that "[i]n the absence of an initial determination by the Trustees, there is no dispute that is ripe for judicial review and, therefore, there is no case or controversy upon which any relief can be granted." Id. at p. 4.

The Tenth Circuit Court of Appeals has held that although section 1103(c)(2)(A) does "not establish entitlement to restitution under all circumstances and that the trustees are required

to make an initial determination on refund requests," a court may decide as a matter of law that under the particular circumstances of a case it would be an abuse of the trustees' discretion to deny a refund even in the absence of an initial determination by the trustees.[2]  <u>Peckham v. Bd. of Trs. Of the Int'l Bhd. of Painters and Allied Trades Union and Indus. Nat'l Pension Fund</u>, 719 F.2d 1063, 1066 (10th Cir. 1983).  Thus, the absence of an initial determination by the Trustees does not automatically deprive this court of subject matter jurisdiction over the defendant's counterclaim.

The plaintiffs further argue that "a claim under ERISA for recovery of alleged overpayment that is based on a theory of unjust enrichment . . . cannot be recognized where it would override a contractual provision of a benefit plan or trust." *Motion*, pp. 5-6.  The plaintiffs state that the "Trust Agreement of the Fund" (the "Trust Agreement") contains the following provisions:

> 1. The Trustees shall have such expressed and implied powers as may be necessary to carry out the purposes of this Trust and to discharge their obligations as Trustees hereunder.  They shall carry out their duties with the care, skill, prudence and diligence which a prudent man acting in a like capacity would use under conditions prevailing at the time.  Such powers shall include, but not be limited to, the following:
>
> * * *
>
> (f)  Within one year after the payment of the contribution, to refund to Employers such moneys as are found to be in excess of amounts due from them or which were secured by the Trustees through inadvertence or mistake of fact.

<u>Id.</u> and Ex. B.

---

[2] It would be premature to make such a determination on the record as it is presented at this stage of the proceedings.

The plaintiffs state that because the Amended Counterclaim alleges that the last of the defendant's mistaken payments was made in April 2007, its claim for repayment is beyond the one year period and is barred by the express terms of the Trust Agreement.

The Trust Agreement is not properly before the court. It is not referred to in the Amended Counterclaim (or any of the pleadings) and it is not central to the defendant's Amended Counterclaim. Therefore, the plaintiffs do not have authority to submit it for consideration with their Motion. GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384-1385 (10th Cir. 1997) (stating that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss").

I am aware that in ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, I may treat the motion as a Rule 56 summary judgment motion when matters outside the pleadings are presented to and not excluded by me, and all parties have been given a reasonable opportunity to respond as provided in Rule 56. Fed. R. Civ. P. 12(d). A party is deemed to have been given a reasonable opportunity to respond if the party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response. Nichols v. United States, 796 F.2d 361, 364 (10th Cir.1986). Here, the defendant does not attempt to exclude the Trust Agreement, but it has not filed any evidence with its response to rebut the

plaintiffs' arguments regarding the Trust Agreement.[3]  Under these circumstances, I cannot conclude that the defendant has been given a reasonable opportunity to respond the plaintiffs' Motion to Dismiss as provided in Rule 56.

## IV.  CONCLUSION

I respectfully RECOMMEND that Plaintiffs' Motion to Dismiss Second Counterclaim [Doc. # 28] be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[3]The plaintiffs have argued that "a plain reading of the terms demonstrates" that the defendant's claim for repayment is beyond the one year period and is, therefore, barred by the express terms of the Trust Agreement and that in any event, it is the Trustees' interpretation of the terms that is binding on the court, and the Trustees interpret the terms "to indicate they do not have the discretion to issue a refund more than one year after the final alleged overpayment." *Plaintiffs' Reply in Support of Motion to Dismiss Second Counterclaim* [Doc. #35] (the "Reply"), p. 2.  The plaintiffs' statement of their interpretation of the Trust Agreement is not supported by evidence, nor is it appropriately asserted in a motion to dismiss.  Even if the Trust Agreement was properly before me, I disagree with the plaintiffs that a "plain reading" of the relevant terms supports their arguments.  To the contrary, the terms of paragraph 1 of the Trust Agreement appear to me to be ambiguous, and resolution of the ambiguity is not appropriate on a motion to dismiss.

Dated February 10, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge